UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARIA LYNN SANDERS,<br>　　　　　　　Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br>　　　　　　　Defendant. | Case # 1:18-cv-1402-DB<br><br>MEMORANDUM DECISION<br>AND ORDER |

## INTRODUCTION

Plaintiff Maria Lynn Sanders, ("Plaintiff") brings this action pursuant to the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner") that denied her application for Disability Insurance Benefits ("DIB") under Title II of the Act and her application for supplemental security income ("SSI") under Title XVI of the Social Security Act (the Act). *See* ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c), and the parties consented to proceed before the undersigned in accordance with a standing order (*see* ECF No. 11).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). *See* ECF Nos. 9, 10. Plaintiff also filed a reply. *See* ECF No. 13. For the reasons set forth below, Plaintiff's motion (ECF No. 9) is **DENIED**, and the Commissioner's motion (ECF No. 10) is **GRANTED**.

## BACKGROUND

On January 26, 2015, Plaintiff protectively filed her DIB and SSI applications, alleging a disability beginning on October 16, 2012 (the disability onset date), due to: fibromyalgia, migraines, chronic pain syndrome, adjustment disorder with depression, carpal tunnel syndrome, allergies, anxiety, stomach issues, nausea, and vomiting. Transcript ("Tr.") 220-33, 248. Plaintiff's

claim was denied initially on July 1, 2015 (Tr. 109-120), after which she requested an administrative hearing. Plaintiff's hearing was held via video on June 13, 2017. Administrative Law Judge Elizabeth Ebner (the "ALJ") presided over the hearing from Falls Church, Virginia. Plaintiff appeared and testified from Buffalo, New York. Tr. 15. Plaintiff was represented by Ida Comerford, an attorney. Tr. 71. Mark Pinty, an impartial vocational expert ("VE"), also appeared and testified at the hearing. *Id*. At the hearing, Plaintiff amended her alleged disability onset date to January 26, 2015, the date she filed her applications.

The ALJ issued an unfavorable decision on August 21, 2017 finding that Plaintiff was not disabled under sections 216(i), 223(d) and 1614(a)(3)(A) of the Act. Tr. 15-33. On October 5, 2018, the Appeals Council denied Plaintiff's request for further review. Tr. 1-7. The ALJ's decision thus became the "final decision" of the Commissioner subject to judicial review under 42 U.S.C. § 405(g).

## **LEGAL STANDARD**

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. § 405(g)) (other citation omitted). The Act holds that the Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F. 3d 496, 501 (2d Cir. 1990).

## II. The Sequential Evaluation Process

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments meeting the durational requirements, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. *Id*. § 404.1509. If not, the ALJ determines the claimant's residual functional capacity, which is the ability to perform physical or mental work activities on a sustained basis notwithstanding limitations for the collective impairments. *See id*. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id*. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 404.1520(g). To do so, the

Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## **ADMINISTRATIVE LAW JUDGE'S FINDINGS**

The ALJ analyzed Plaintiff's claim for benefits under the process described above and made the following findings in her August 21, 2017 decision:

1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2018;

2. The claimant has not engaged in substantial gainful activity since January 26, 2015, the alleged onset date (20 CFR 404.1571 *et seq*., and 416.971 *et seq*.);

3. The claimant has the following severe impairments: Cervical degenerative disc disease with left CS radiculopathy; mild left carpal tunnel syndrome; fibromyalgia; obesity; migraines; affective disorder; anxiety disorder (20 CFR 404.1520(c) and 416.920(c));

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926);

5. The claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a).[1] She can lift, carry, push, and/or pull up to ten pounds occasionally and less than ten pounds frequently, and can sit for up to six hours and stand and/or walk for up to six hours in an eight-hour workday. However, after sitting for forty-five minutes she requires the freedom to stand for one to two minutes without going off task or leaving the workstation. She can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl, but can never climb ladders, ropes, or scaffolds. She can occasionally reach overhead and frequently reach in all other directions, handle, finger, and operate hand controls. She can tolerate occasional exposure to humidity, wetness, extremes of heat and cold, and vibrations. The claimant is further limited to work involving simple, routine tasks, and would be off-task up to five percent of an eight-hour workday in addition to normal breaks;

---

[1] "Sedentary work" involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

6. The claimant is unable to perform any past relevant work (20 C:FR 404.1565 and 416.965);

7. The claimant was born on March 4, 1977 and was 37 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 C:FR 404.1563 and 416.963);

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964);

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (*See* SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2);

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a));

11. The claimant has not been under a disability, as defined in the Social Security Act, from January 26, 2015, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

Tr. at 15-33

Accordingly, the ALJ determined that, for a period of disability and disability insurance benefits filed on January 26, 2015, the claimant is not disabled under sections 216(i) and 223(d) of the Social Security Act. Tr. 33. The ALJ also determined that, for the application for supplemental security income, protectively filed on January 26, 2015, Plaintiff is not disabled under section 1614(a)(3)(A) of the Act. *Id*.

## **ANALYSIS**

Plaintiff asserts two points of error. First, Plaintiff argues that the ALJ erred by failing to provide good reasons for her rejection of the only treating physician opinion of record. *See* ECF No. 9-1 at 1, 19. Specifically, Plaintiff takes issue with the ALJ's assignment of little weight to the opinion of Matthew Fernaays, M.D. ("Dr. Fernaays"), Plaintiff's treating physician. Second, Plaintiff argues that the ALJ's "highly-specific" RFC determination is a product of the ALJ's lay judgment and is not supported by substantial evidence. *Id*. at 1, 25.

A Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence." 42 U.S.C. § 405(g); *see also Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir.2000). Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. The Court may also set aside the Commissioner's decision when it is based upon legal error. *Rosa*, 168 F.3d at 77.

I. **The ALJ Appropriately Evaluated the Medical Opinion Evidence.**

As to the first point of error, the Court notes that the ALJ did a thorough and exhaustive review of the record in evaluating the opinion evidence and arriving at her decision. Little can be added by the Court. As noted above, Dr. Fernaays was Plaintiff's treating physician. The record reflects that Dr. Fernaays treated Plaintiff since 2013 for various ailments. Tr. 790. Then in May 2017, Dr. Fernaays completed a Medical Opinion Statement opining that Plaintiff could walk only one city block, sit for ten minutes at a time, stand for twenty minutes at a time, and do each for a total of about two hours each day. Tr. 792. He further opined Plaintiff needs periods of walking around during a work-day every 20 minutes for about 10 minutes each time. Tr. 792. He opined she would need breaks throughout the workday, could frequently lift less than ten pounds, occasionally lift ten pounds, rarely lift 20 pounds and never more. *Id*. Plaintiff could rarely look down, turn her head left or right or look up and only occasionally hold her head in a static position; rarely perform other postural movements; and was limited to using the hands 25-30% of the time. Tr. 793.

The opinions of Plaintiff's treating physicians should be given "controlling weight" if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [are] not inconsistent with the other substantial evidence in [the] case record," 20 C.F.R. §§

404.1527(c)(2), 416.927(c)(2). However, a treating physician's opinion is not afforded controlling weight when the opinion is inconsistent with other substantial evidence in the record, such as the opinions of other medical experts. 20 C.F.R. § 404.1527(d)(2); *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999). If the ALJ gives the treating physician's opinion less than controlling weight, he must provide good reasons for doing so. *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998); *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008).

If not afforded controlling weight, a treating physician's opinion is given weight according to a non-exhaustive list of enumerated factors, including (i) the frequency of examinations and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the physician's opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the physician has a relevant specialty. 20 C.F.R. §§ 404.1527(c) (2), 416.927(c)(2); *see Clark*, 143 F.3d at 118; *Marquez v. Colvin*, No. 12 CIV. 6819 PKC, 2013 WL 5568718, at *9 (S.D.N.Y. Oct. 9, 2013). In rejecting a treating physician's opinion, an ALJ need not expressly enumerate each factor considered if the ALJ's reasoning and adherence to the treating physician rule is clear. *See, e.g., Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013). Furthermore, as long as the ALJ is careful to explain his decision, he is entitled to reject portions of a medical opinion that conflict with other evidence in the record. *See Raymer v. Colvin*, No. 14-CV-6009P, 2015 WL 5032669, at *5 (W.D.N.Y. Aug. 25, 2015) ("an ALJ who chooses to adopt only portions of a medical opinion must explain his or her decision to reject the remaining portions").

Here, the ALJ properly evaluated the medical opinion evidence of record, articulated good reasons for the weight accorded to each opinion, and such reasons are supported by substantial evidence. Consistent with the treating physician rule, the ALJ acknowledged that Dr. Fernaays was a treating source. Tr. 30. And while that fact may tend to increase the weight generally entitled

to a medical opinion, as noted above, it is not determinative. *See Crowell v. Comm'r of Soc. Sec. Admin.*, 705 F. App'x 34, 35 (2d Cir. 2017). In this case, the ALJ explained that she gave the opinion little weight because Dr. Fernaays did not have a particular medical specialty; his opinion relied too heavily on Plaintiff's subjective statements; and his opinion was inconsistent with the other evidence of record, including exam observations, MRIs, x-rays and other tests. Tr. 30-31. These are all appropriate reasons for giving the opinion less than controlling weight.

The regulations specifically note the factor of a doctor's specialty and consistency of the opinion with the record. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c); *see also Petrie v. Astrue*, 412 F. App'x 401, 407 (2d Cir. 2011) (opinion of specialist regarding medical issue related to area of specialty given more weight than opinion of source who is not specialist); *Halloran v. Barnhart*, 362 F.2d 28, 32 (2d Cir. 2014) ("[T]he opinion of the treating physician is not afforded controlling weight where, as here, the treating physician issued opinions that are not consistent with other substantial evidence in the record, such as opinions of other medical experts."); *Woodmancy v. Colvin*, 577 F. App'x 72, 75 (2d Cir. 2014) (The ALJ properly assigned little weight to treating physician's opinion when contradicted by unremarkable clinical findings.). Furthermore, a treating source's opinion is not entitled to controlling weight when it as not consistent with the source's own treatment notes or with other substantial evidence of record or was not particularly informative. *See Halloran*, 362 F.2d at 31-32 (citing *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002).

As the ALJ noted, Plaintiff alleged disability based upon a variety of physical and mental impairments. Tr. 21. The ALJ also noted that despite her repeated complaints of pain, records often noted normal gait, full strength, intact sensation and reflexes, intact coordination, and normal range of motion of her neck. *Id.*; *see, e.g.*, Tr. 519, 601-03, 611, 750. The ALJ also noted that as to

Plaintiff's complaints of fibromyalgia, there were no objective medical records supporting such a diagnosis. Tr. 22. As the ALJ explained, nothing in the record indicates that Plaintiff "exhibited the requisite l l-fibromyalgia tender points," and there is no evidence indicating that she ever consulted with a rheumatologist or other fibromyalgia specialist to confirm this diagnosis. Tr. 22. Plaintiff alleges that the ALJ was making a medical conclusion when she stated that "fibromyalgia is a largely subjective impairment by nature, and cannot be evaluated with diagnostic testing" (Tr. 28). *See* ECF No. 9-1 at 29. However, this is not a medical judgment, but rather, a restatement of what is known about fibromyalgia and stated as such in SSR 12-2p. *See* SSR 12-2p, 2012 WL 3104869 (S.S.A. 2012). In addition, the ALJ noted that although Plaintiff had treated with a pain management specialist since at least January 2013, she was noted to appear "comfortable" despite her reports of "terrible" pain. Tr. 22, 436.

The ALJ also noted that objective tests in 2016 showed only "mild" left-sided carpal tunnel syndrome. Tr. 22, 788. The ALJ went on to note that the objective diagnostic and radiology imaging did not corroborate Plaintiff's descriptions of the nature and severity of her symptoms. Tr. 22. A brain MRI failed to identify any underlying cerebral etiology for her allegations of severe headaches. Tr. 22, 524. A lumbar spine MRI in 2013 was within normal limits. Tr. 22, 447. The written report indicated no evidence of disc herniation, stenosis or significant degenerative changes. Tr. 447. X-rays of the thoracic spine demonstrated mild thoracic spondylosis with mild kyphosis described as "stable." Tr. 446. X-rays of the pelvis failed to demonstrate any significant degenerative findings. Tr. 444. As to Plaintiff's complaints of severe neck pain and carpal tunnel syndrome, cervical EMG studies were normal. Tr. 531-32. An MRI of the cervical spine noted disc complexes with bilateral stenosis at C3 and C4. However, also noted is no central stenosis or

abnormal bony signal. Tr. 533. A 2015 lumbar study done at the same time noted no significant lumbosacral pathology. Tr. 534.

On May 25, 2012, Plaintiff saw Andrew C. Hilburger, M.D. ("Dr. Hilburger"), a neurologist Batavia Neurological Services. Tr. 518-19. Even though she complained of continued pain, her gait and station were normal; she had 5/5 strength in all extremities; and her neck range of motion was noted to be limited in all directions. Tr. 535-536. In September 2015, Plaintiff reported receiving a nerve block and reported that it had significantly helped. Tr. 537. Range of motion in her neck was now noted as mildly limited in all directions. *Id*. X-rays of the lumbar spine in September 2015 noted mild disc narrowing, and mild lumbar spondylosis L5-S1 with facet arthropathy. Tr. 658. An x-ray of her hip noted no new degenerative finding and stated, "the patient has had multiple hip radiological examinations without findings." Tr. 659. A month later she returned to Dr. Hilburger complaining of increased back pain. Tr. 539. Her neck ROM was within normal limits, and her gait and station were normal although she had reduced ROM to her back with positive SLR bilaterally. *Id*. An EMG of both legs was normal. Tr. 543. Several months later, in April 2016, she saw Dr. Hilburger complaining of continued neck and back pain. Tr. 544. However, her ROM in the neck was normal; she had normal station and gait; and her motor strength test was normal. Tr. 544-45. She was last seen in October 2016 and noted to have limited ROM of the neck and back with normal gait and station and normal strength in all extremities. Tr. 546-47.

A notation from the United Memorial Medical Center ("UMMC") Pain Center in October 2015 noted that her pain started from a fall. Tr. 672-73. In February 2016, she was seen in the UMMC Emergency Room ("ER") for hip pain. Tr. 600-04. The x-ray was read as a normal exam. Tr. 603. In May 2016, Plaintiff came to the UMMC ER for neck pain and back pain that had been

present for the past three days. Tr. 605-09. The musculoskeletal examination revealed normal inspection of the back, normal lower extremities and normal upper extremities. Tr. 608. The attending physician noted she had no neurologic deficits on examination. *Id*. Despite her reports of severe pain and limitation, she was observed "multiple times" moving her hair off her face by twisting her neck without any apparent distress. *Id*. This stands in stark contrast to Dr. Fernaays' restrictive opinion regarding how often she could move her head. Tr. 793. There is a notation that she had been playing with her kids but felt she had not overdone it. Tr. 606. This is not an isolated event in the record. As the ALJ noted, there were a number of such inconsistencies. Tr. 25. As noted, one month before her ER visit, she had been to Batavia Neurological Services for her headaches which were noted to be stable. Tr. 706. The notation reflects that plaintiff continued to have fair amount of neck and back pain. Tr. 706. However, she had a normal gait and station and 5/5 strength in all extremities with normal tone. Tr. 706-07.

She again went to the UMMC ER in June 2016 complaining of back pain. Tr. 610-13. Other than some mild lumbar paraspinal muscles without midline tenderness, the physical examination was completely normal. *Id*. The record noted negative SLR bilaterally. Tr. 612. In March 2017, she again visited the ER complaining of body pain. Tr. 614-19. Her physical findings were normal, inspection of the back and lower and upper extremities was normal, and motor exam was unremarkable. Tr. 617. No restrictions were ever noted of record from UMMC or Dr. Fernaays. Furthermore, the objective findings from UMMC do not match those of Dr. Fernaays. While Dr. Fernaays often noted an antalgic gait, as discussed above, the record reflects completely normal findings by different doctors in Plaintiff's multiple ER visits.

As noted above, the ALJ cited to various MRI and other diagnostic studies that did not support the limitations included in Dr. Fernaays' opinion. Tr. 22-31. For example, Dr. Fernaays'

11

opined limitations on Plaintiff's ability to sit, stand, walk, and perform other postural activities is contradicted by Plaintiff's October 2015 EMG/NCS test, which was normal and failed to show any lumbar radiculopathy or lower extremity neuropathy. Tr. 540-43. Dr. Fernaays also included significant limitations on the use of Plaintiff's hands and arms, but the September 2016 EMG/NCS testing showed only mild left side carpal tunnel syndrome. Tr. 788. The ALJ noted, despite Plaintiff's complaints and Dr. Fernaays' opinion that this condition and related limitations had existed prior to the alleged onset date in January 2015, the condition was a new finding on the 2016 test. Tr. 23. Furthermore, Dr. Feraanys' assessment is not supported by his own treatment notes, and to some extent, is puzzling. First, he opines that Plaintiff can only walk one block without severe pain or rest (Tr. 791); then he states she must walk every 20 minutes for 10 minutes at a time even though he states she can only walk one city block without rest or severe pain (Tr. 792). Moreover, it appears that Dr. Feraanys had concluded Plaintiff was "disabled" at only her second visit in March 2013, when he completed disability paperwork on her behalf for "chronic pain." Tr. 368-69.

The ALJ also noted and discussed the findings of two consultative examiners, particularly the findings consultative examiner Hong-Biao Liu, M.D. ("Dr. Liu"). Tr. 27-30. Plaintiff saw Dr. Liu for a consultative exam in May 2015. Tr. 507-10. Although Plaintiff reported 10/10 migraine headaches, "whole-body pain," and numbness and tingling in her hands and toes, Dr. Liu observed Plaintiff to be in no acute distress. Tr. 507. Upon examination, Plaintiff walked with a slow gait and claimed to be unable to perform heel and toe walking due to low back pain; she also alleged she could not squat and demonstrated limited range of motion in her shoulders and cervical and lumbar spine. Tr. 507-10. She did, however, have full range of motion in her elbows, forearms, wrists, hips, knees, and ankles and stable and non-tender joints with no redness, heat, swelling or

12

effusion. *Id*. She demonstrated full 5/5 strength without muscle atrophy in the upper and lower extremities and equal reflexes, and she had intact hand and finger dexterity with full strength. Tr. 507-10. Dr. Liu also noted Plaintiff's activities of daily living. Tr. 508. Plaintiff reported she could cook and clean house and do laundry and shopping one to two times a week. *Id*. She also reported doing childcare one to six times a week. *Id*. Based on his objective clinical findings, Dr. Liu opined that Plaintiff had mild to moderate limitations for prolonged walking, bending, kneeling and overhead reaching. As the ALJ explained, she gave Dr. Liu's opinion significant weight, even despite the fact that the ALJ noted that Plaintiff's self-reported limitations were often inconsistent. Tr. 28.

As to Plaintiff's complaints that the ALJ relied on her lay judgment in forming the RFC, the Court finds that the ALJ properly considered the record in arriving at an appropriate RFC. Dr. Liu's opinion of mild to moderate limitations in and of itself supports a finding of a full range of light work. *Lewis v. Colvin*, 548 F. App'x 675, 677-78 (2d Cir. 2013) ("[T]he ALJ's determination that [the plaintiff] could perform light work is supported by [the doctor]'s assessment of mild limitations for prolonged sitting, standing, and walking, and direction that [the plaintiff] should avoid heavy lifting, and carrying [and] is further supported by evidence in the record regarding [the plaintiff's] daily activity.") (internal citations and quotation marks omitted); *Harrington v. Colvin*, No. 14-CV-6044P, 2015 WL 790756, at *13 (W.D.N.Y. Feb. 25, 2015) (citing *Carroll v. Colvin*, No. 13-CV-456S, 2014 WL 2945797, at *1 (W.D.N.Y. June 30, 2014) (consultative opinion that plaintiff was moderately limited in standing and walking supported ALJ's RFC assessment that plaintiff could perform light work).

In sum, the ALJ considered each of the medical opinions in the record and explained which portions of the opinions she had rejected. The ALJ acted within her discretion when she afforded

different degrees of weight to the opinions and medical evidence in the record. *See Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (The ALJ "was entitled to weigh all of the medical evidence available to make an RFC finding that was consistent with the record as a whole."). An ALJ considers medical opinions as to a claimant's level of functioning, but he must ultimately reach an RFC assessment based on the record as a whole. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) ("Although we consider opinions from medical sources on issues such as . . . your residual functional capacity . . . the final responsibility for deciding these issues is reserved to the Commissioner."). As discussed further below, despite Plaintiff's assertions to the contrary, substantial evidence supported the ALJ's RFC, and the Court finds no error in the ALJ's assessment of the medical opinion evidence.

## II. The ALJ's RFC Finding Was Supported By Substantial Evidence.

The RFC is the most a claimant can do despite her impairments. *See Woodmancy*, 577 F. App'x at 74 n.1, citing 20 C.F.R. § 404.1545(a)(1). It is the ALJ's responsibility to evaluate all of the medical evidence and assess the RFC. *See* 20 C.F.R. §§ 404.1527, 404.1545. Contrary to Plaintiff's contention (*see* ECF No. 9-1 at 25-30), the ALJ's RFC assessment is supported by substantial evidence. The ALJ also did not make the RFC finding based on raw medical data or her own "quasi-medical" judgment, as Plaintiff argues. *Id*. at 19.

As discussed extensively above, the ALJ evaluated all of the evidence, including weighing medical opinions and considering treatment notes. Tr. 20-31. Even if there is no supportive functional assessment from a physician, the RFC can still be supported by substantial evidence, including treatment notes and Plaintiff's own testimony. *See Johnson v. Colvin*, 669 F. App'x 44 (2d Cir. 2016); *see also Monroe v. Colvin*, 676 F. App'x 5 (2d Cir. 2017) (The court found substantial evidence, such as normal mental status findings and extensive activities, including

vacations and outdoor recreation, supported the ALJ's RFC for unskilled work, despite lack of supportive functional assessment from a medical source.).

The also ALJ took into account Plaintiff's latest studies in formulating the RFC. Although the ALJ did not find Plaintiff's complaints of back and neck pain as severe as Plaintiff alleged, she did take such into account when determining her RFC. *See generally Hogan v. Astrue*, 491 F.Supp.2d 347 (W.D.N.Y. 2007) (remanded based on the ALJ's failure to provide a function-by-function analysis or to make a specific determination of whether the claimant's impairments could reasonably be expected to produce the back and neck pain alleged; failure to cite a single medical source; and failure to explain why he did not give weight to a medical opinion that contradicted his RFC determination); *see also Cichocki v. Astrue*, No. 11-CV-755S, 2012 WL 3096428, at *9 (W.D.N.Y. July 30, 2012), *aff'd*, 729 F.3d 172 (2d Cir. 2013), and *aff'd*, 534 F. App'x 71 (2d Cir. 2013) (distinguishing *Hogan*). Unlike *Hogan*, the ALJ here discussed Plaintiff's medical history in great detail in her decision and specifically considered Plaintiff's complaints as to pain and limitations. She found that such impairments could be reasonably expected to produce Plaintiff's symptoms but not to the intensity, persistence, or limitations alleged by Plaintiff. Tr. 21. The ALJ specifically noted Plaintiff's multiple ER visits and findings, as well as the largely benign findings on multiple radiological exams and repeated EMG studies, which were all entirely within normal limits. Tr. 21-23.

The ALJ also noted records from Summit Physical Therapy ("Summit"). Tr. 25, 549-87. Despite telling her neurologist in 2015 that she had participated in physical therapy "numerous times" (Tr. 539), the ALJ observed that according to the record, Plaintiff did not initiate physical therapy until late 2016, and her participation was inconsistent even though she reported significant improvement in her symptom control. Tr. 25. Plaintiff was discharged from Summit in October

15

2016 for nonattendance, having missed several appointments. Tr. 570. It appears she returned to Summit in February 2017. Tr. 573. At that visit, Plaintiff could stand up easily and walk with a well-controlled and stable reciprocal arm swing-based gait, and she was also able to get on to the exam table without difficulty. *Id*. The assessment is that she had a reasonably good prognosis. Tr. 574. Again, after only a couple of sessions in 2017, she was a "no show" for her appointment. Tr. 581. The discharge note stated she was doing quite well, and her cervical ROM was within normal limits with only minor shoulder discomfort. *Id*.

Based on the foregoing, the record abundantly supports the ALJ's thorough and carefully-reasoned RFC. As explained above, the ALJ cited to the various treatment notes, exams, tests and imaging results to support the limitations included in the RFC. Tr. 20-31. The ALJ also noted Plaintiff's daily activities. Tr. 23. The ALJ explained that she gave significant weight to Plaintiff's complaints of pain and functional deficits in limiting her to only sedentary work. Tr. 28. The ALJ also included an alternating position requirement in the RFC, based on Plaintiff's complaints of increased pain when in one position for too long. *Id*. Plaintiff's mild left carpal tunnel syndrome and left-sided C-5 radiculopathy, as well as her complaints of neck and shoulder pain and mildly reduced range of motion with intact hand and finger dexterity and grip strength, are also incorporated in the RFC with limitations for occasional reaching overhead and frequent reaching in all other directions, handling, fingering, and operating hand controls. Tr. 28. The ALJ noted that Plaintiff's fibromyalgia symptoms require her to have only occasional exposure to wetness, humidity, extreme heat and cold, and vibrations, and her complaints of migraine and fibromyalgia are further accommodated with the limitation to being off-task up to five percent of the workday in addition to the normal breaks and by limiting her work to that involving simple, routine tasks. Tr. 28-29.

Based on the foregoing, the ALJ explained how Plaintiff's various impairments resulted in the particular functional limitations included in the RFC, and the Court finds no error in the ALJ's RFC determination.

## **CONCLUSION**

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 9) is **DENIED**, and the Commissioner's Motion for Judgment on the Pleadings (ECF No. 10) is **GRANTED**. Plaintiff's Complaint (ECF No. 1) is **DISMISSED WITH PREJUDICE**. The Clerk of Court will enter judgment and close this case.

**IT IS SO ORDERED**.

_____
DON D. BUSH
UNITED STATES MAGISTRATE JUDGE